# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN GLADDEN, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| | : | NO. 10-5475 |
| v. | : | |
| | : | |
| HILDA SOLIS, SECRETARY | : | |
| UNITED STATES DEPARTMENT | : | |
| OF LABOR | : | |
| Defendant | : | |

## **M E M O R A N D U M**

**Stengel, J.**                                                                             June 9, 2011

      This is an employment discrimination case filed by Warren Gladden, who claims he was discriminated against on the basis of his race and his age when he applied for but did not receive a position with the United States Department of Labor ("DOL") as an Equal Opportunity Specialist. Because Mr. Gladden's complaint and the exhibits thereto establish that he does not have a plausible claim for relief, I will grant the motion to dismiss filed by the defendant.

### I.     BACKGROUND

      Mr. Gladden filed his complaint against the DOL on November 11, 2010. The defendant filed a motion to dismiss on January 14, 2011, and Mr. Gladden filed his response on March 19, 2011.

      Mr. Gladden's complaint alleges the following: he is an African American man over the age of 40. Compl. ¶ 7, 8. On January 23, 2008, two vacancy announcements were issued

seeking to fill two Equal Opportunity Specialist positions with the DOL. Id. at ¶ 23(a) (citing Announcements PH-DEA-08-035 and PH-08-047).[1] The major duties of the positions were described as follows:

> The primary purpose of this position is to assure uniformity and [consistency] in all technical [aspects] of compliance reviews, complaint investigations and other related activities, as well as to oversee regional adherence to Office of Federal Contract Compliance Programs policy, procedures, directives, etc.
> - Plans and makes recommendations for regionwide compliance reviews, investigations and enforcement priorities.
> - Makes recommendations for disposition or other actions on investigations, conciliation agreements, and administrative enforcement actions.
> - Plans, develops, coordinates and administers Regional policies and procedures, and serves as the Regional technical expert on operations issuances, policies, etc.
> - Serves as operational link between the Regional office, District and Area Office and the Office of the Solicitor.

Complaint ¶ 23(a), Attachment 3 to Complaint. The vacancy announcement further indicated that "applicants must have 52 weeks of specialized experience" and defined specialized experience as:

> experience that equipped the applicant with the particular knowledge, skills, and abilities to perform successfully the duties of the position, and that is typically in or related to the work of the position to be filled. Some examples of specialized experience include: Evaluating, investigating, monitoring, and identifying systematic [sic] discrimination and equal opportunity compliance activity as well as conducting complex reviews, negotiations, and developing compliance agreements. Experience analyzing employment practices, determining whether those practices discriminate against protected group members, and investigating complex pattern and/or practice discrimination complaints.

---

[1] Mr. Gladden lists paragraphs 21 through 24 twice in his complaint, but includes different assertions each time. Therefore, the first paragraphs will be referred to as paragraphs 21(a), 22(a), and so on, and the second set of same-numbered paragraphs will be referred to as paragraphs 21(b), 22(b), and so on.

Id. at ¶ 24(a), Attachment 3 to Complaint.

Mr. Gladden applied for both positions on February 6, 2008. Compl. ¶ 28. He holds a BS in Physics and an MS in Electrical Engineering and a Master's certificate in Technology Management. Id. at ¶ 21(b). In the additional information section of his resume, Mr. Gladden "documented his unpaid EEO experience" in two paragraphs. See Attachment 4 to Compl., p. 4 of 8. Mr. Gladden described two experiences in this section of his resume: first, he filed a claim against his former employer with the "local Human Rights Commission." Id. In pursuing this claim, he investigated and identified "discrimination issues related to [his] complaint," and "compiled supporting cases for [his] attorney." Id. Second, Mr. Gladden described his actions over a two year period in which he had been seeking employment with both the federal government and private employers. He explained that "[e]xercising my rights as an applicant to ensure that my applications have been processed in compliance with Title VII has led me to engage in the EEO complaint process with several federal agencies." Id. During this process, he did extensive research on employment discrimination decisions and pursued his investigations "via email communications and FOIA requests." Id.

Mr. Gladden's applications were reviewed by Sandra Flores, a Human Resources specialist who worked with a selecting official to fill the vacancies. Compl. at ¶ 24(b). He received an email from Ms. Flores on February 8, 2008, informing him that he did not qualify for the PH-08-047 position and that "he did not qualify for the position because [he] did not meet the specialized experience described in the vacancy announcement and/or the qualification requirements[.]" Id. at ¶ 31; Attachment 5 to Compl. Mr. Gladden subsequently exchanged a number of emails with Ms. Flores in which he inquired about the score his application had

3

received based on his answers to a number of automated questions and asked what was "missing" from his resume. See id. at ¶¶ 32-36; Attachment 5. Ms. Flores responded as follows:

> Sir,
> Your experience shows that of an Engineer, an Engineering Supervisor, and "Member of Technical Staff." Where did you state any of the specialized experience below in your resume, besides in your answers to the questions. Your resume/work experience must back up your answers to the questions and your resume doesn't.

Id. at ¶ 37, Attachment 5. Mr. Gladden responded by explaining to her that the "detailed accounting of [his] EEO experience" in his resume contained "the details you are looking for." Id. at ¶ 38; Attachment 5. The position was offered to Amy Bailey. Id. at ¶ 53. Mr. Gladden claims that Ms. Bailey was "objectively rated lower" than Mr. Gladden. Id.

On February 8, 2008, Mr. Gladden was notified that his application would not be considered for the PH-DEA-08-035 position "due to the availability of a 10-point preference eligibles with a service-connected disability of 10 percent or more." Compl. ¶ 39. The letter explained that since disabled veterans are considered ahead of other candidates, "it is unlikely that other candidates will be considered." Id. When he sought additional information from Ms. Flores, she informed him that she could not tell him how many "preference eligibles" applied, stated that he was not qualified for the job, and explained that "EEO responsibilities are not the same as EOS (Equal Opportunity Specialist) which is what the job is. Your resume did not say that you have experience with contract compliance issues." Id. at ¶¶ 41-43. She offered to have another specialist look at his resume to make a determination about his qualifications. Id. The ultimate selectee for the PH-DEA-08-035 position was Jennifer Stotter, who is not a veteran. Id. at ¶ 49.

The remainder of Mr. Gladden's complaint largely contains conclusions of law about steps

4

that must be followed by the DOL in filling federal vacancies, how automated scores are to be used for ranking applicants, which automated questions were EEO specific, and the requirements and procedures set forth in the Uniform Guidelines for Employee Selection Procedures. See id. at ¶ 57, 59, 61, 68, 69.

Mr. Gladden's complaint contains three counts: Count I alleges racial discrimination in violation of Title VII; Count II alleges age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); and Count III alleges "Reprisal for Engaging in Protected Activities" in that the DOL's conduct "constitutes retaliation against the Plaintiff because he engaged in activities protected by Title VII and the ADEA." Compl. ¶¶ 72-77.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all plausible inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

In recent rulings, however, the Supreme Court has rejected language in <u>Conley</u> stating that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Twombly</u>, 550 U.S. at 561. Rather, a "complaint must allege facts suggestive of [the proscribed] conduct," <u>id.</u> at 564, and it must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 556). Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997); <u>Sterling v. Southeastern Pennsylvania Transp. Auth.</u>, 897 F. Supp. 893 (E.D. Pa. 1995). In recognition of these principles, courts must first identify those allegations in a complaint that are mere conclusions and are therefore not entitled to the assumption of truth, and next, consider whether the complaint's factual allegations, which *are* entitled to a presumption of truth, plausibly suggest an entitlement to relief. <u>Ashcroft v. Iqbal</u> - - U.S. - -, 129 S.Ct. 1937, 1950 (2009).

The Third Circuit has acknowledged that "the quantum of facts that a discrimination complaint should contain may bear further development." <u>Guirguis v. Movers Spec. Svcs., Inc.</u>, 346 Fed. Appx. 774, 776 n.6 (3d Cir. 2009). However, it remains true, including in the employment discrimination context, that "only a complaint that states a *plausible* claim for relief survives a motion to dismiss." <u>Iqbal</u>, 129 S.Ct. at 1950; <u>Wilkerson v. New Media Technology Charter School, Inc.</u>, 522 F.3d 315, 322 (3d Cir. 2008) ("The plausibility paradigm announced in <u>Twonbly</u> applies with equal force to analyzing the adequacy of claims of employment discrimination.").

6

When reviewing a complaint, a court should consider not only the allegations contained in the complaint itself but also the exhibits attached thereto, which the complaint incorporates pursuant to Federal Rule of Civil Procedure 10(c). Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192 (3d Cir.1993).

**III. DISCUSSION**

Title VII prohibits employment discrimination on the basis of an applicant's race or color. 42 U.S.C. § 2000e-2(a)(1). Under Title VII, a plaintiff states a *prima facie* case of employment discrimination where he shows that he (1) is a member of a protected class; (2) was qualified for the position he sought; (3) was rejected despite being qualified for the position; and (4) under circumstances raising an inference of discrimination, the employer continued to seek out individuals with qualifications similar to those of the plaintiff to fill the position. Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir. 2003). Under the ADEA, an employer may not discharge or otherwise discriminate against an individual because of that individual's age. 29 U.S.C. § 623(a)(1). To establish a disparate treatment claim under the ADEA, a plaintiff must prove that age was the "but-for" cause of the defendant's adverse decision. Gross v. FBL Financial Services, Inc., - - U.S. - -, 129 S.Ct. 2343, 2350 (2009) (a plaintiff must prove by a preponderance of the evidence, which may be direct or circumstantial, that age was the "but-for" cause of the challenged employer decision).

While an employment discrimination plaintiff need not plead a *prima facie* case of discrimination, he must still allege facts raising the right to relief above a speculative level. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Bell

7

v. KA Indus. Services, LLC, 567 F. Supp. 2d 701, 707 (D.N.J. 2008) ("The elements of a prima facie claim do not have to be proven, but merely must be plausible.").

      The DOL claims that Mr. Gladden has failed to plead facts "that would allow a reasonable inference that defendant DOL discriminated against him, i.e., that it intentionally treated him differently from other similarly situated individuals, because of his race, age, or his prior EEO activity." Def.'s Mem., 11. I agree. Mr. Gladden claims intentional discrimination by the DOL in his complaint, but the allegations in his complaint, and the attachments thereto, show that Mr. Gladden was not considered for a position as an Equal Opportunity Specialist because Ms. Flores found that his resume did not show that he had the relevant qualifying experience for the position. As alleged in the complaint, the position for which Mr. Gladden applied was highly specialized: the person accepted for the position would be responsible for assuring uniformity in all technical aspects of EEO compliance reviews and would oversee regional adherence to federal contract requirements. Recommended experience for the position involved "[e]valuating, investigating, monitoring, and identifying systematic discrimination and equal opportunity compliance activity as well as conducting complex reviews, negotiations, and developing compliance agreements," among other things. Ms. Flores specifically informed Mr. Gladden that she considered him unqualified for the position because his resume lacked indication of "experience with contract compliance issues." Compl. Attachment 4. Mr. Gladden has failed to plausibly allege that he was qualified for the position and that he was rejected for it out of discriminatory animus.

      In addition to providing this valid reason for finding Mr. Gladden unqualified for the position, Ms. Flores stated in an affidavit, attached by Mr. Gladden attached to the complaint, that: (1) she was the only person responsible for certifying applicants for the position; (2) she found Mr.

Gladden not to be qualified for the 035 position because he did not have the required one year of specialized work experience at the GS-12 federal level; (3) she did not consider Mr. Gladden's application for the 047 position because his automated score fell below the cutoff score; (4) at the time of the certification process for the positions, she "did not know or even think about Mr. Gladden's race;" (5) at the time of the certification process for the positions, she "did not know or even think about Mr. Gladden's age;" and (6) at the time of the certification process, she did not "have knowledge or perceive any EEO activity by Mr. Gladden." See Gladden ROI Exhibit F-2, 3-5.

Mr. Gladden fails to provide any indication in his complaint why Ms. Flores discriminated against him on the basis of his race, age, or EEO activity, or how she could have done so if she was unaware of his race and age. Aside from conclusory statements that the DOL was discriminatory in failing to hire him, there are no factual averments supporting Mr. Gladden's allegations, and the exhibits to his complaint only confirm an absence of such discriminatory intent. Mr. Gladden has failed to set forth a plausible claim for relief.

## IV. CONCLUSION

For the reasons set forth above, I will grant the motion to dismiss filed by the defendant. Mr. Gladden will be granted leave to amend his complaint only upon the filing of a motion for leave to amend demonstrating that amendment would not be futile.